### In re BREFO.

(District Court, E. D. Kentucky, at London. May 11, 1914.)

1. ALIENS (§ 68*)—NATURALIZATION PROCEEDINGS—DECLARATION OF INTENTION—REQUISITE FORM.

Naturalization Act June 29, 1906, c. 3592, 34 Stat. 596 (U. S. Comp. St. Supp. 1911, p. 528), is expressly designed to provide "a uniform rule for the naturalization of aliens throughout the United States," and its administration is committed to the Bureau of Naturalization thereby created, which is required to furnish to the clerks of courts having the requisite jurisdiction of naturalization proceedings, on their requisition, all blank forms and record books required. Such clerks are required to keep the records in a specified manner, and to charge certain fees and report and account to the United States for one-half of the same. *Held*, that it is the evident intention of the act that every step toward naturalization shall be under government supervision and control, that a court which has not obtained the requisite forms and records cannot exercise jurisdiction in naturalization matters, and that a declaration of intention filed in such a court, and not upon the prescribed form, is a legal nullity, and cannot be made the basis of a petition for naturalization.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. § 68.*]

2. ALIENS (§ 68*)—NATURALIZATION—RULES AND REGULATIONS OF DEPARTMENT.

Rules and regulations made by the Secretary of Labor under authority of Naturalization Act June 29, 1906, c. 3592, § 28, 34 Stat. 606 (U. S. Comp. St. Supp. 1911, p. 543), if not contrary to its terms, have the same weight as the law itself.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 138–145; Dec. Dig. § 68.*]

In the matter of the naturalization of Arnold Brefo. Petition denied without prejudice.

Edwin Morrow, U. S. Atty., of Madisonville, Ky., for the United States.

COCHRAN, District Judge. [1] This is a petition for naturalization filed in this court on December 29, 1913, by Arnold Brefo, a resi-

dent of Hyden, Leslie county, Ky., and therefore within the jurisdictional limits of this court. The petition of Mr. Brefo is predicated upon a declaration of intention filed in the circuit court for Leslie county, Ky., on February 17, 1910.

In form the petition meets the requirements of the law, with the exception of the fact that the declaration of intention was not filed on a form furnished by the United States government for that purpose. Naturalization forms had never been supplied to the clerk of the Leslie circuit court by the government since the passage of the Act of Congress of June 29, 1906 (34 Stat. 596), which was in full force and effect on February 17, 1910, at which time the declaration of intention of this alien was filed. The declaration of intention filed in good faith by Mr. Brefo was, therefore, not filed on a government form. It is the contention of the government that the declaration of intention so filed in the Leslie circuit court, and not on a government form, is not a valid declaration of intention, and cannot be used as a basis for this petition for naturalization, and that, therefore, this petition should be dismissed.

The Act of Congress of June 29, 1906, enacted under constitutional authority, is entitled "An act * * * to provide for a uniform rule for the naturalization of aliens throughout the United States." Under this act it is provided that the "Bureau of * * * Naturalization shall have charge of all matters concerning the naturalization of aliens." The enacting of a law for the "uniform naturalization of aliens" and the vesting of the authority for the administration of that law in a certain body forces the conclusion that Congress meant that all steps by aliens toward their naturalization should be taken under direct governmental supervision and control.

In furtherance of this idea the act provides in section 3 that "all courts of record * * * having a seal, a clerk, and jurisdiction in actions at law or equity, or law and equity, in which the amount in controversy is unlimited," shall have power to naturalize aliens. In the same section the act further provides that "the courts herein specified shall, upon the requisition of the clerks of such courts, be furnished from time to time by the Bureau of * * * Naturalization with such blank forms as may be required in the naturalization of aliens. * * *" Thus, after defining which courts shall have the power to naturalize aliens, Congress specified, as the first requisite to the exercise of such jurisdiction, that such courts should, through their clerks, obtain the proper forms from the Bureau of Naturalization. The Leslie circuit court comes within the definition of courts authorized by Congress to naturalize aliens.

Further, under section 13 of the act it is made compulsory upon every clerk "exercising jurisdiction in naturalization cases" to charge a certain stipulated fee, half of which shall be accounted for to the United States. Here, clearly, the keynote of uniformity is shown. Again, under section 14, appears:

"That declarations of intention and petitions for naturalization shall be bound in chronological order in separate volumes, indexed, consecutively numbered, and made a part of the records of the court."

[2] In section 28 of the act it is provided:

"That the Secretary of * * * Labor shall have power to make such rules and regulations as may be necessary for properly carrying into execution the various provisions of this act."

Acting under such authority the Secretary of Labor has made rules and regulations which, if not contrary to the law authorizing them, are entitled to the same weight as the law itself. Fok Yung Yo v. United States, 185 U. S. 296, 22 Sup. Ct. 686, 46 L. Ed. 917; Caha v. United States, 152 U. S. 212, 14 Sup. Ct. 513, 38 L. Ed. 415. Under the authority of the act of Congress, the Secretary of Labor specifies the method of making requisition for supplies and how declarations of intention will be furnished to clerks of courts for issuance to aliens. Section 10 of such regulations reads:

"Clerks of courts will be furnished with requisition blanks on which are listed, by number and title, all blank forms, including record and order books, to be used in the naturalization of aliens, and these forms must be obtained exclusively from the Bureau of Naturalization, Department of Labor, none other being official."

There seems to be no room to doubt the intent of Congress. A uniform rule for the naturalization of aliens is enacted into law; certain courts are specified where aliens may proceed to be naturalized; all such courts are clothed with authority if they desire to use it; jurisdiction exists if only they choose to exercise it; certain forms for this uniform system of naturalization are agreed upon, and one of the administrative branches of the government is named as the distributing center for such forms; fees are to be accounted for to the government, and records are to be filed at Washington. It is clear that the intent was that every step toward naturalization should be under governmental supervision and control, and therefore on government forms. Under section 3 it becomes obligatory upon the part of the government to furnish naturalization supplies to clerks of courts when requisition is made therefor by clerks of courts having requisite jurisdiction as defined by the act.

To be a valid paper, a declaration of intention must be filed on the form furnished for that purpose by the government. If filed on a form other than that furnished by the government, it is a legal nullity. Otherwise there is an end to uniformity, and government control and supervision cannot exist. If filed on some form other than that furnished by the government, why is it necessary for a declaration to be filed on any form at all? It becomes apparent that to permit this would destroy this most wise provision of the naturalization law. Not only are declarations of intention and petitions for naturalization to be filed on government forms furnished by the federal body, but the law in section 3 even specifies more elaborately that the certificates of naturalization are to be on safety paper furnished by the government.

In addition to the specific wording of the statute, the whole act, when read together, shows that Congress placed in the hands of the Bureau of Naturalization the administration of the law. Congress realized that without a central directing agency there could be no uniformity.

As previously stated, the exercise of naturalization jurisdiction was

to have its birth in the receipt of naturalization supplies from the government, thereby giving to the court the tools with which to work. It appears that the Leslie circuit court never chose to exercise this jurisdiction legally; no requisition for supplies was ever made to the government, and the fact that the declaration of Arnold Brefo was not made on the form regularly used by the government indicates that the Leslie circuit court did not have such government forms.    Not having such forms, the court never had taken the steps demanded by Congress to the proper exercise of the authority conferred upon it. Not having the means to exercise jurisdiction, the court could not issue a valid declaration of intention to Brefo.    A declaration so issued is a legal nullity, and as such cannot be used as a basis for a petition for naturalization.    The petition is therefore invalid for the dual reason that the declaration comes from a court without its compliance with formalities necessary to the exercise of jurisdiction in naturalization matters and that it is not on the government form.

I am convinced that, were I to admit this alien, the law would be disregarded and the applicant be done a palpable injustice.    He has paid for the opportunity to have his case judicially determined, and, if certificate of naturalization be granted to him, he would have the right to rest secure in the enjoyment of an unimpeachable citizenship status, not subject to possible successful attack at some future date, when he relies most upon it.    That I cannot give, on his application defective in a material respect, and believe it to be to his interest, aside from the question of law involved, that he proceed de novo.

Quoting from the opinion of the Circuit Court of Appeals for the Third Circuit, handed down in March, 1913, in the case of United States v. Kolodner, 204 Fed. 240, 124 C. C. A. 1:

"This conclusion may be, and doubtless is, a hardship imposed upon the applicant in this case.  We may not, however, in order to avoid the hardship of a particular case, relax the strict requirements imposed by the lawmaking power upon those who seek to obtain the privilege of citizenship in the United States, or impair in any degree, by judicial interpretation, the safeguards sought to be thrown around the citizenship of the country."

It may be that this alien was informed by the clerk of the court and others that this declaration of intention was in legal form and was valid.    But, as stated in Johannessen v. United States, 225 U. S. 227, 32 Sup. Ct. 613, 56 L. Ed. 1066, quoting with approval from United States v. Spohrer (C. C.) 175 Fed. 440:

"An alien friend is offered under certain conditions the privilege of citizenship.  He may accept the offer and become a citizen upon compliance with the prescribed conditions, but not otherwise.  His claim is of favor, not of right.  He can only become a citizen upon and after a strict compliance with the acts of Congress.  An applicant for this high privilege is bound, therefore, to conform to the terms upon which alone the right he seeks can be conferred.  It is his province, and he is bound, to see that the jurisdictional facts upon which the grant is predicated actually exist."

For the reasons stated, the petition of the said Arnold Brefo is denied, without prejudice to the right of this alien to file a new petition when the jurisdictional requirements of the law have been met.