## In re KALPACHNIKOFF.

District Court, E. D. Pennsylvania.
September 26, 1928.

No. 93270.

W. James MacIntosh, of Philadelphia, Pa., for applicant.

George W. Coles, U. S. Atty., of Philadelphia, Pa., and John F. C. Gordon, Chief of Division of Naturalization, for the United States.

DICKINSON, District Judge. The conclusion reached is that the applicant should be admitted to citizenship. There is but one question to be answered in this case. We say this because the Bureau of Naturalization would recommend him as worthy of citizenship, were it not for the sole objection next mentioned. The Naturalization Act prescribes as a condition of citizenship that two citizens shall certify "that they have personally known the applicant to be [have been] a resident of the United States for a period of· at least five years continuously," etc. It is made a further condition that "it shall be made to appear to the court," passing upon his application, that "he has resided continuously within the United States five years," etc.

The applicant came to this country July 14, 1920, acquired a residence here, and formally declared his intention to make his residence here permanent. So far as intention enters into the question, this is unquestioned. He has, however, not been physically within the United States for five years continuously. The accepted explanation of this is that he holds a position of responsibility with the Baldwin Locomotive Works. His employer has a large and important foreign trade. To promote this, the applicant was sent abroad to Manchuria in connection with work there being done by his employer, and was away for several years, but wholly on this mission. The full five years of his residence here had not elapsed before he went to Manchuria, nor have full five years elapsed since his return. The question has hence arisen whether he has continuously resided here for the statutory length of time.

There are several different words in our language which in common speech convey the like meaning. Among them are "lives" and "resides," and phrases of the like import, such as "makes his home" and "has his domicile." The idea, meant to be conveyed by these and the like words and phrases of common usage, is clear enough, but the meaning of the word "residence" or "domicile," when employed in a statute, is often provocative of dispute. Statutes, defining the right to the exercise of the elective franchise, use the words "resides" and "residence" in much the same sense as the naturalization laws. A primary and essential element is intention, but it is an intention which must have something more substantial than a mere vocal existence or an existence in the mind. It is a carried-out intention, evidenced by acts. Etymologically, residence carries with it the thought. It is where a man "sits down" with the thought of remaining. The terminology of the law prefers the use of the word "domicile." Residence and domicile are, however, not quite synonymous. Residence is sometimes distinguished into residence and legal residence. The latter is pretty nearly the equivalent of domicile. Our inquiry is directed, not to what the lexicographers tell us, but into what Congress meant by the requirement of a five-year residence.

This we think is sufficiently clear: The word was chosen to present two thoughts, or one in a double aspect. First the applicant must have such a residence as will evidence his purpose to cast in his lot with us; secondly, such a length of residence as to afford opportunity for his prospective fellow citizens to be persuaded of his desirability as a citizen. The first thought is fully met in the facts of this case. The real question is whether the interruption in his physical sojourn here was so great as to defeat the secondary purpose of the choice by Congress of the phrase employed. The words chosen are addressed to both applicants and the courts. It is a fair inference that Congress knew the

words would be interpreted by the former in the light of the usages of common speech, and by the latter in the language of lawyers. In the former, a man's residence is the place which he makes his home; in the latter, it is the place of his legal residence or domicile. The real thought is the same. It is a little difficult to find words to accurately express the thought, but it is not an uncommon thing for a man to have several homes, in the sense of abiding places, or what are commonly called houses, or residences. The expression country house and town house, summer home or residence and winter home, are not uncommon. The same person has, however, but one domicile or residence, in the sense under consideration.

There are certain well-settled principles or doctrines of the law which are of aid to us as guides. One is that a man may acquire a legal residence or domicile; another is that, when once acquired, he retains it until he has acquired a different one. The applicant undoubtedly acquired a residence here. There is no evidence from which the finding could be made that he afterwards acquired one elsewhere. If he did, it was in Manchuria, and it is clear that, notwithstanding the fact that he "resided" there for a considerable time, he never made that his "residence" or "domicile."

Stress has been justly laid upon the use of the word "continuously." Here again we have the legal maxim that the continuity of residence or domicile is not broken by an absence temporary in character, no matter how prolonged.

This brings us again to the second thought of whether an interrupted physical presence in the country affords the required test of opportunity to the vouchers to testify to qualifications. Of his qualifications to be admitted to citizenship, his vouchers must first judge before they can testify, and the court must finally judge before it is "persuaded." This makes every case stand upon its own fact features, and makes of no one case a ruling precedent. Here the vouchers have supplied us with the required evidence, and the court makes the finding "that it has been made to appear to the satisfaction of the court that immediately preceding the date of his application he has resided continuously within the United States for five years at least," and admittedly he has met all the other conditions of admission to citizenship.

When differences in fact situations are allowed for, the conclusion reached is in accord with the rulings to which we have been referred, among which are the following: U. S. v. Cantini (C. C. A.) 212 F. 925; U. S. v. Dick (D. C.) 291 F. 420; U. S. v. Jorgenson (D. C.) 241 F. 413; In re Schneider (C. C.) 164 F. 335; In re Reichenburg (D. C.) 238 F. 859; U. S. v. Rockteschell (C. C. A.) 208 F. 530; U. S. v. Shanahan (D. C.) 232 F. 169; U. S. v. Bragg (D. C.) 257 F. 588; U. S. v. Ginsberg, 243 U. S. 472, 37 S. Ct. 422, 61 L. Ed. 853; Johannessen v. U. S., 225 U. S. 227, 32 S. Ct. 613, 56 L. Ed. 1066.

The applicant is admitted to take the oath of allegiance.