## In re KNIGHT.

(District Court, E. D. New York., July 13, 1909.)

ALIENS (§ 61*)—NATURALIZATION—PERSONS CAPABLE—HALF-BREEDS—"WHITE PERSON."

Petitioner was born on a British schooner in the Yellow Sea. His father was an Englishman, and his mother half Chinese and half Japanese, their marriage having occurred at Shanghai under the British flag. Petitioner enlisted in the United States navy off the coast of China in 1882, and first came to the United States August 5, 1892. He had served honorably since his enlistment until his application for citizenship, when he was 43 years old. *Held*, that petitioner was not a free "white person," and was therefore not entitled to naturalization, under Rev. St. § 2169 (U. S. Comp. St. 1901, p. 1333), providing that the act shall apply to aliens being free white persons and those of African nativity and descent, and

---

*Act Cong.* May 6, 1882, c. 126, § 14, 22 Stat. 61 (U. S. Comp. St. 1901, p. 1333), prohibiting the admission of Chinese to citizenship.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 119–122; Dec. Dig. § 61.*

For other definitions, see Words and Phrases, vol. 8, pp. 7446, 7447.

Citizenship of Chinese, see notes to Gee Fook Sing v. United States, 1 C. C. A. 212; Lee Sing v. United States, 35 C. C. A. 332.]

Louis R. Bick, Asst. U. S. Atty., and Hugh Govern, Jr., Sp. Asst. U. S. Atty.

Petitioner, in pro. per.

CHATFIELD, District Judge. The applicant is some 43 years of age, and has served honorably in the United States navy since the year 1882. He has a medal for service in the battle of Manila Bay, in which he was upon the flagship Olympia, and his record in the navy is more than sufficient to meet the requirements of act July 26, 1894, c. 165, 28 Stat. 124 (U. S. Comp. St. 1901, p. 1332). Knight enlisted off the coast of China, upon the Monocacy, and first came to the United States upon the 5th of August, 1892. It appears from the record that he was born upon a schooner flying the British flag, in the Yellow Sea, off the coast of China; that his father was of English birth and parentage; and that his mother was one-half Chinese and one-half Japanese, having been married to the applicant's father at Shanghai, under the British flag.

The court is entirely satisfied as to the applicant's intelligence and character, and the only question arises under the provisions of section 2169 of the Revised Statutes (U. S. Comp. St. 1901, p. 1333) viz.:

"This title shall apply to aliens being free white persons, and to aliens of African nativity and to persons of African descent."

A person of the Mongolian race, either Chinese or Japanese, cannot be naturalized, even with honorable service in the army or navy (In re Buntaro Kumagai [D. C.] 163 Fed. 922), and the ineligibility of Chinese has been expressly stated by the provisions of Act May 6, 1882, c. 126, 22 Stat. 61 (U. S. Comp. St. 1901, p. 1333), of which section 14 is as follows:

"That hereafter no state court or court of the United States shall admit Chinese to citizenship; and all laws in conflict with this act are hereby repealed."

But no case to which the attention of the court has been drawn seems to specifically determine what percentage of Mongolian blood will exclude the applicant from classification as a "white person." In the case of In re Saito (C. C.) 62 Fed. 126, the statutes with relation to the word "white" are recited, and a native of Japan was refused naturalization for the reasons above stated.

In the case of colored persons, a question similar to the one at bar has been raised, and in Re Camille (C. C.) 6 Fed. 256, the applicant, with a white father and an Indian mother, was held not to be a "white person." This case is based upon a number of decisions in Ohio, where the question of the mixture of white and red, or white and black, races has been considered; and there seems to be nothing in the present

naturalization statute, or any of the acts of Congress, which would lead to a different conclusion. A person, one-half white and one-half of some other race, belongs to neither of those races, but is literally a half-breed.

Naturalization creates a political status which is entirely the result of legislation by Congress, and, in the case of a person not born a citizen, naturalization can be obtained only in the way in which Congress has provided that it shall be granted, and upon such a showing of facts as Congress has determined must be set forth. It must have been within the knowledge and foresight of Congress, when legislating upon this question, that members of other races would serve in the army and navy of the United States, under certain conditions, and it must remain with Congress to determine who of this class can obtain, under the statutes, the rights of a citizen of the United States.

The present application must be denied.